UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DOUGLAS DURNIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21 CV 123 RWS |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant.[1] | ) | |

## MEMORANDUM AND ORDER

Plaintiff Douglas Durnil brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's decision denying his application for disability insurance benefits under Title II of the Social Security Act.  For the reasons discussed below, I will affirm the Commissioner's decision.

## Background

Durnil protectively filed a Title II application for a period of disability and disability insurance benefits on September 25, 2018.  (Tr. 133).  Durnil initially alleged that he became disabled on July 26, 2014, but later amended his alleged onset date to January 31, 2015.  (Tr. 157).  Durnil alleged that he became disabled due to

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

a hip replacement, pain, strength issues, balance issues, and hernias. (Tr. 162). Durnil was last insured on March 31, 2019. (Tr. 158).

Durnil's application was denied at the initial claims level. (Tr. 66). Durnil then filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 72). A hearing was held on November 20, 2019. (Tr. 30). On January 31, 2020, the ALJ issued a decision denying Durnil disability benefits, finding that Durnil was not under a disability at any point from January 31, 2015, through March 31, 2019. (Tr. 22). Durnil appealed the ALJ's decision, but the Appeals Council denied his request for review. (Tr. 1). As a result, the ALJ's decision became the final decision of the Commissioner. See 42 U.S.C. § 405(g).

Durnil filed this action on February 1, 2021, seeking judicial review of the Commissioner's final decision. Durnil argues that reversal and remand is required because (1) the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence, and (2) the ALJ's decision lacks a proper pain evaluation. Durnil requests that I reverse and remand the Commissioner's decision for a calculation and award of benefits or remand this matter for further evaluation.

## **Legal Standard**

To be eligible for disability benefits under the Social Security Act, a claimant must prove that he is disabled. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). The Social Security Act defines disability as the "inability to engage in any

2

substantial gainful activity" due to a "medically determinable physical or mental impairment" that can be expected to result in death or which has lasted or can be expected to last for at least twelve continuous months.  § 423(d)(1)(A).  A claimant will be declared disabled only if his impairment or combination of impairments is of such severity that he is unable to engage in his previous work and—considering his age, education, and work experience—he is unable to engage in any other kind of substantial gainful work in the national economy.  § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner engages in a five-step evaluation process: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the claimant has the RFC to perform his past relevant work; and (5) whether the claimant has the RFC to perform other jobs that exist in significant numbers in the national economy.  20 C.F.R. § 404.1520. The burden of proof rests with a claimant through the first four steps but shifts to the Commissioner at step five.  Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009).

When reviewing a denial of disability benefits, my role is limited to determining whether the Commissioner's decision complies with the relevant legal requirements and is supported by substantial evidence on the record as a whole.  Id.

3

Substantial evidence refers to less than a preponderance but enough for a reasonable person to find it adequate to support the Commissioner's decision.  Id.  I must affirm the Commissioner's decision if, "after reviewing the entire record, it is possible to draw two inconsistent positions, and the Commissioner has adopted one of those positions."  Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012).  I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome.  McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010).

## ALJ Decision

In this case, the ALJ denied Durnil disability benefits after finding that he was not under a disability at any point from his alleged onset date of January 31, 2015, through the date he was last insured, March 31, 2019.  (Tr. 22).  At step one, the ALJ found that Durnil did not engage in substantial gainful activity during the relevant period.  (Tr. 13).  At step two, the ALJ found that Durnil had the following severe impairments that limited his ability to perform basic work activities: left hip osteoarthritis (status post left hip arthroplasty) and bilateral inguinal and umbilical hernias.  (Id.)  The ALJ also found that Durnil's obesity was a non-severe impairment.  (Tr. 14).  At step three, the ALJ found that Durnil did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1.  (Id.)

4

At step four, the ALJ found that, during the relevant period, Durnil had the RFC to perform medium work, including the ability to lift up to fifty pounds occasionally; lift and/or carry up to twenty-five pounds frequently; stand and/or walk for about six hours in an eight-hour workday with normal breaks; sit for up to six hours in an eight-hour workday with normal breaks; occasionally climb ramps and stairs; occasionally balance; and frequently stoop, kneel, crouch, and crawl.  (Id.) The ALJ found that Durnil could never climb ladders, ropes, or scaffolds.  (Id.)  The ALJ also found that Durnil should avoid exposure to excessive vibration, unprotected heights, and concentrated exposure to hazardous machinery.  (Id.) Based on this RFC and the testimony of a vocational expert, the ALJ found that Durnil was unable to perform any of his past relevant work.  (Tr. 20).

However, at step five, based on the vocational expert's testimony and considering Durnil's age, education, work experience, and RFC, the ALJ found that Durnil could have made a successful adjustment to other work that existed in significant numbers in the national economy.  (Tr. 21).  The vocational expert identified the following jobs within Durnil's RFC as existing in significant numbers in the national economy: hand packager (200,000 positions) and laundry worker (60,000 positions).  (Id.)  Because the ALJ found that Durnil could have made a successful adjustment to other work that existed in significant numbers in the

national economy, he concluded that Durnil was not under a disability at any point during the relevant period.  (Tr. 21–22).

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt Durnil's recitation of facts, (Doc. 21-1), to the extent they are admitted by the Commissioner, (Doc. 28-1), as well as the additional facts submitted by the Commissioner, (id.), as they are not contested by Durnil.  Additional facts will be discussed as necessary to address the parties' arguments.

## Discussion

### A.    RFC Determination

Durnil's first argument is that reversal and remand is required because the ALJ's RFC determination is not supported by substantial evidence.  A claimant's RFC is the most the claimant can do despite his limitations, and an ALJ must assess a claimant's RFC based on all of the relevant evidence in the claimant's case record. § 404.1545(a)(1).  Relevant evidence includes "'medical records, observations of treating physicians and others, and an individual's own description of his limitations.'"  Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016) (quoting Myers v. Colvin, 721 F.3d 521, 527 (8th Cir. 2013)).  Because a claimant's RFC is a medical question, an ALJ's RFC determination "'must be supported by some

medical evidence of the claimant's ability to function in the workplace.'" Id. at 932 (quoting Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007)).

Durnil argues that the ALJ's RFC determination is not supported by substantial evidence because, in his view, the ALJ improperly relied on the prior administrative medical findings of the agency's medical consultant, Garland Tschudin, M.D., and improperly relied on his own inferences from the medical records.  Having reviewed the record, I find that the ALJ neither erred in relying on Dr. Tschudin's findings nor improperly relied on his own inferences.

> 1.   The ALJ did not err in relying on Dr. Tschudin's prior administrative medical findings.

A prior administrative medical finding is a finding, other than the ultimate determination of whether a claimant is disabled, about a medical issue made by an agency's medical or psychological consultant at a prior level of review based on his or her review of the evidence in the claimant's case record.  § 404.1513(a)(5).  Prior administrative medical findings may relate to things such as the existence and severity of a claimant's impairments, the existence and severity of a claimant's symptoms, and a claimant's RFC.  Id.  While an ALJ is not required to adopt any prior administrative medical findings, such evidence must be considered because the agencies' medical and psychological consultants are "highly qualified and experts in Social Security disability evaluation."  § 404.1513a(b)(1).

For claims filed after March 27, 2017, like Durnil's, an ALJ does not "defer or give any specific evidentiary weight … to any medical opinion(s) or prior administrative medical finding(s)." § 404.1520c(a).  Instead, an ALJ must evaluate the persuasiveness of such evidence based on several factors: supportability; consistency; the medical source's relationship to the claimant; the medical source's specialization; and other factors.  § 404.1520c(c).  The most important factors are supportability and consistency.  § 404.1520c(b)(2).  Supportability provides that "[t]he more relevant the objective evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  § 404.1520c(c)(1).  Consistency provides that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical … and nonmedical sources …, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  § 404.1520c(c)(2).  An ALJ must articulate how persuasive he found all medical opinions and prior administrative medical findings in a claimant's case record.  § 404.1520c(b).  An ALJ must also explain how he considered the supportability and consistency factors.  § 404.1520c(b)(2).

Here, Dr. Tschudin's findings were prior administrative medical findings in the record before the ALJ.  Dr. Tschudin reviewed the evidence in Durnil's case

record on December 20, 2018.  (Tr. 53–56, 60).  Based on his review of the evidence, Dr. Tschudin found that, since Durnil's alleged onset date, Durnil could occasionally lift and/or carry fifty pounds; frequently lift and/or carry twenty-five pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; climb ramps and stairs; occasionally climb ladders, ropes, and scaffolds; occasionally balance; and frequently stoop, kneel, crouch, and crawl. (Tr. 59).  Dr. Tschudin also found that Durnil had no manipulative, visual, communicative, or environmental limitations.  (Tr. 60).  Because Dr. Tschudin's findings were prior administrative medical findings in the record, the ALJ properly considered them in formulating Durnil's RFC.  See § 404.1513a(b)(1).

The ALJ also adequately explained why he found Dr. Tschudin's findings persuasive.  As required by the applicable regulations, the ALJ stated in his decision that he considered Dr. Tschudin's findings and found them persuasive.  (Tr. 18). The ALJ also explained how he considered the supportability and consistency factors.  With respect to supportability, the ALJ noted that Dr. Tschudin opined that Durnil should avoid frequent ladders, ropes, scaffolding, and balance because of his hip replacement.  (Id.)  The ALJ also noted that Dr. Tschudin supported his limitations on Durnil's lifting based on Durnil's hip replacement and hernia repairs. (Id.)  As for consistency, the ALJ noted that Dr. Tschudin's findings were consistent with the evidence in Durnil's case record, which the ALJ had previously discussed

in considerable detail.   (Tr. 15–18).   The ALJ ultimately concluded that Dr. Tschudin's findings were persuasive because they were well supported by Dr. Tschudin in his narrative explanation and were consistent with the evidence in Durnil's case record.   (Tr. 18).   The ALJ's reasonable reliance on Dr. Tschudin's findings was within the zone of choice.   See Morton v. Saul, No. 2:09-CV-92-RLW, 2021 WL 307552, at *8 (E.D. Mo. Jan. 29, 2021).

Moreover, Durnil's arguments as to why the ALJ erred in relying on Dr. Tschudin's findings are unavailing.   Durnil argues that the ALJ erred in relying on Dr. Tschudin's findings because (1) Dr. Tschudin did not examine Durnil; (2) Dr. Tschudin was unable to review evidence created after he made his findings and, thus, was unable to review the entire record before the ALJ; (3) Dr. Tschudin did not provide an adequate explanation of what evidence supported his findings; and (4) Dr. Tschudin's findings were inconsistent with evidence in the record because they were the same for the entire period of January 31, 2015, through March 31, 2019.

First, the ALJ did not err in relying on Dr. Tschudin's findings merely because Dr. Tschudin did not examine Durnil.   As explained above, the current regulations require an ALJ to consider all prior administrative medical findings in a claimant's case record.   § 404.1513a(b)(1).   The current regulations also eliminate the hierarchy of medical sources, deference to specific medical opinions, and the assigning of specific evidentiary weight to medical opinions.   § 404.1520c(a).   A medical

source's relationship to a claimant is now just one factor, among several, in evaluating the persuasiveness of a medical opinion or prior administrative medical finding, and it is no longer among the most important factors.   § 404.1520c. Therefore, contrary to Durnil's suggestion, Dr. Tschudin's findings were not entitled to "little weight" merely because Dr. Tschudin did not examine him.

Second, although Dr. Tschudin was unable to review medical records created after he made his findings, Durnil has not cited any legal authority that requires a medical consultant's findings to be based on subsequently created medical records or to be made within a certain time frame for an ALJ to rely on them.  See Carter v. Kijakazi, 4:20-CV-01346-JAR, 2022 WL 407120, at *7 (E.D. Mo. Feb. 10, 2022) ("Nothing in the Social Security regulations requires a report to be within a certain time frame for an ALJ to rely on it.  … Nor does legal authority require a consultant's medical opinion to be based on subsequently created medical records for an ALJ to rely on it.") (internal quotation marks and citations omitted).  Durnil has also provided very little explanation of how any medical records created after Dr. Tschudin made his findings—of which there appears to be few—rendered Dr. Tschudin's findings unpersuasive at the time of the ALJ's decision.[2]

---

[2] In his brief, Durnil merely states that "[i]t is unclear what records [Dr. Tschudin] was provided with, but he was not able to review any evidence created after his opinion, which includes a rating by Dr. King and Dr. Volarich, which document ongoing left inguinal crease pain, limited range of motion of the left hip, weakened left hip girdle and atrophy in his entire left lower extremity." Durnil does not explain how the ratings he refers to are inconsistent with Dr. Tschudin's findings or the ALJ's RFC determination.  In addition, while Dr. Tschudin may have been unable to review

Third, Dr. Tschudin provided an adequate explanation of what evidence supported his findings.  According to Durnil, Dr. Tschudin's explanation "consists of stating that [his] limitations are 'due to prior left hip replacement in August 2018 and hernia repairs in 2017.'"  Durnil claims that, "[o]ther than identifying the etiology of the limitations," there is no real explanation of what evidence supports Dr. Tschudin's RFC findings.  This neglects Dr. Tschudin's narrative explanation in which he discussed Durnil's impairments, surgeries, continued symptoms, treatment, subsequent improvements, and eventual release to full duty work activity.  (Tr. 60).  In his narrative explanation, Dr. Tschudin also noted that Durnil continued to have some limitations, which were incorporated in his RFC findings.   (Id.) Durnil's claim that Dr. Tschudin provided an inadequate explanation seeks a level of explanation that is not required under the applicable regulations.

Finally, Durnil's argument regarding the alleged inconsistency of Dr. Tschudin's findings is unpersuasive because it is undeveloped and unsupported. Durnil argues that "[t]he findings of both the [ALJ] and Dr. [Tschudin] are inconsistent with the record documenting ongoing pain that eventually resulted in a total hip replacement.  According to the ALJ and Dr. [Tschudin], [Durnil] was able to perform the same RFC throughout the three-year period, which is inconsistent

---

the ratings, the ALJ did consider and discuss them before determining that Dr. Tschudin's findings were consistent with the evidence in Durnil's case record.  (Tr. 16–20).

with the need for surgeries."  Durnil does not develop this argument.  Nor does Durnil provide any citations to the record or to legal authority.  In the absence of any development or citations to legal authority, it is unclear what point Durnil is attempting to make.  In any event, as discussed above, the ALJ found that Dr. Tschudin's findings were consistent with the evidence in Durnil's case record, which the ALJ discussed at length.  That determination and the ALJ's RFC determination are supported by substantial evidence on the record as a whole.

2.      The ALJ did not improperly rely on his own inferences from the medical records.

In addition to contesting the ALJ's reliance on Dr. Tschudin's findings, Durnil argues that, to the extent the ALJ's RFC determination differs from that of Dr. Tschudin, the ALJ improperly relied on his own inferences from the medical records. The difference pointed to by Durnil relates to his limitations with climbing and exposure to certain elements.  Dr. Tschudin found that Durnil was unlimited in his ability to climb ramps and stairs and that Durnil was limited to only occasionally climbing ladders, ropes, and scaffolds. (Tr. 59).  Dr. Tschudin also found that Durnil did not have any environmental limitations.  (Tr. 60).  The ALJ, on the other hand, found that Durnil could only occasionally climb ramps and stairs and that Durnil could never climb ladders, ropes, or scaffolds.  (Tr. 14).  The ALJ also found that Durnil should avoid exposure to excessive vibration, unprotected heights, and concentrated exposure to hazardous machinery.  (Id.)

13

Durnil is correct that an ALJ "may not draw upon his own inferences from medical reports" in formulating a claimant's RFC.  Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000).  But that was not done in this case.  In assessing greater limitations than Dr. Tschudin, the ALJ considered and discussed the opinions of several medical providers.  (Tr. 18–20).  Although the ALJ found most of the opinions unpersuasive as to long-term or permanent restrictions, the ALJ found the medical opinion of David King, M.D., persuasive with respect to Durnil's limitations with climbing.  (Tr. 19).  Dr. King, who performed Durnil's hip surgery in August 2018, opined in October 2018 that Durnil could not climb ladders.  (Tr. 499, 523).  The ALJ found this opinion persuasive because it was consistent with a later medical examination of Durnil, which showed that Durnil had some weakness and unsteadiness when standing on one leg.  (Tr. 19 & 546).  Therefore, the ALJ's assessment of greater limitations was not based on the ALJ's own inferences from the medical records, but rather on the medical opinion of one of Durnil's medical providers and the observations of one of Durnil's medical examiners.

Furthermore, to the extent Durnil argues that the ALJ erred in assessing greater limitations than Dr. Tschudin because the additional limitations were not supported by a specific medical opinion, his argument is without merit because "there is no requirement that an RFC finding be supported by a specific medical opinion."  Hensley, 829 F.3d at 932; see also Cox, 495 F.3d at 619 ("Even though

14

the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.").  I also note that, because Durnil is objecting to the ALJ having assessed *greater* limitations than Dr. Tschudin, his argument (even if accepted) would merely support a finding of harmless error because he has failed to provide any indication that the ALJ would have found him disabled but for the assessment of greater limitations.  See Lucus v. Saul, 960 F.3d 1066, 1069 (8th Cir. 2020) ("An error is harmless when the claimant fails to provide some indication that the ALJ would have decided differently if the error had not occurred.") (internal quotation marks omitted).

### B.    Pain Evaluation

Durnil's second argument is that reversal and remand is required because the ALJ's decision lacks a proper pain evaluation.  When evaluating evidence of pain or other symptoms, an ALJ is not free to ignore a claimant's subjective complaints. Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984).  An ALJ may discount a claimant's subjective complaints, however, if "they are inconsistent with the evidence as a whole."  Milam v. Colvin, 794 F.3d 978, 984 (8th Cir. 2015).  In doing so, an ALJ must consider all of the evidence and make an express determination, detailing his reasons for discounting the claimant's complaints, identifying inconsistencies between the claimant's complaints and the evidence in the record,

and discussing the relevant factors set forth in <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984).  <u>Renstrom v. Astrue</u>, 680 F.3d 1057, 1066 (8th Cir. 2012).

The relevant factors include: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) the claimant's functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence supporting the claimant's complaints.  <u>Id.</u> at 1065–66; <u>see also</u> § 404.1529(c).  While an ALJ must consider these factors, he need not discuss how each factor supports his determination.  <u>Casey v. Astrue</u>, 503 F.3d 687, 695 (8th Cir. 2007).  Nor is an ALJ required to cite <u>Polaski</u> if he conducts an analysis pursuant to § 404.1529.  <u>Schultz v. Astrue</u>, 479 F.3d 979, 983 (8th Cir. 2007).  If an ALJ "explicitly discredits a claimant's testimony and gives a good reason for doing so," a court should defer to his determination.  <u>Id.</u>

In this case, the ALJ determined that Durnil's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms" but that his "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 15).  The ALJ did not cite <u>Polaski</u> or discuss every relevant factor in making this determination, but he stated in his decision that he considered all of Durnil's symptoms based on the requirements of § 404.1529 and

16

Social Security Ruling 16-3p, (Tr. 14), and it is clear that he considered several factors and used numerous facts in evaluating Durnil's subjective complaints.

For instance, the ALJ discussed inconsistencies between Durnil's subjective complaints and his daily activities.  The ALJ noted that Durnil testified that "he walked his dogs, did laundry and household chores, waxed his truck, and even worked on a condominium that he was trying to fix up."  (Tr. 18); see also (id.) (noting Durnil reported that he was "getting back to work painting" in February 2016, reported that he was "trying to start his own business" in April 2018, reported that he had been working as a "handyman" in May 2019, and "generally reported minimal disturbances in his ability to perform his activities of daily living").  The ALJ found these activities inconsistent with Durnil's subjective complaints.  (Id.) Although a claimant's ability to perform such activities "does not disprove disability as a matter of law," Casey, 503 F.3d at 696, "'acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility,'" Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (quoting Johnson v. Apfel, 240 F.3d 1145, 1148–49 (8th Cir. 2001)).  It was therefore appropriate for the ALJ to consider such inconsistencies when evaluating Durnil's subjective complaints.  See, e.g., McDade v. Astrue, 720 F.3d 994, 998 (8th Cir. 2013) (noting the claimant's ability to "perform some cooking, take care of his dogs, use a computer, drive with a neck brace, and shop for groceries with … an electric cart");

Medhaug v. Astrue, 578 F.3d 805, 817 (8th Cir. 2010) (stating "acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain").

The ALJ also discussed the fact that Durnil was not taking any prescription pain medication.  The ALJ noted that Durnil was taking "over the counter ibuprofen for pain" and was not "prescribed any prescription pain medication." (Tr. 15).  The ALJ also noted that there was no evidence in the record of Durnil receiving injections or taking narcotic pain medications. (Tr. 18).  Durnil concedes that these statements are true but disputes their relevance because the ALJ did not inquire into why he did not receive injections or take narcotic pain medications.  Durnil also suggests that the record supports a finding that "stronger pain medications were prescribed at times during the relevant period."  While an ALJ has a duty to develop "a reasonably complete record," Whitman v. Colvin, 762 F.3d 701, 707 (8th Cir. 2014), it is ultimately a claimant's burden to prove that he is disabled, Pearsall, 274 F.3d at 1217.  The ALJ in this case developed a reasonably complete record and was not required to inquire into why Durnil did not receive injections or take narcotic pain medications; it was Durnil's burden to prove that he was disabled.  As a result, in evaluating Durnil's subjective complaints, the ALJ properly considered the fact that Durnil did not receive injections and (at most) only periodically took narcotic pain medications.  See McDade, 720 F.3d at 998 (noting the claimant "did not take any

long-term narcotic medication for pain relief, despite his allegations of chronic disabling pain"); Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) ("A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications.") (internal quotation marks omitted).

Another factor discussed by the ALJ was how Durnil's pain and impairments improved with treatment.  (Tr. 15–17).  Durnil concedes that the record supports a finding of such improvement—for example, successful surgeries and rehabilitation and improved strength and range of motion thereafter—but he argues that "his ability to undergo a successful surgery and rehabilitation does not prove his ability to perform medium work" because "[t]hat determination must be made by an acceptable medical source."  As noted above, contrary to Durnil's suggestion, "there is no requirement that an RFC finding be supported by a specific medical opinion." Hensley, 829 F.3d at 932; see also Cox, 495 F.3d at 619 ("Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.").  And while it may be true that a claimant's improvement after treatment does not prove that claimant's ability to perform medium work, an ALJ may consider such improvement when evaluating the claimant's subjective complaints.  See § 404.1529(c)(3)(v) (stating treatment for relief or other symptoms may be considered when evaluating the intensity and

persistence of a claimant's symptoms); <u>Johnson</u>, 240 F.3d at 1148 (stating "impairments that are controllable or amendable to treatment do not support a finding of total disability") (internal quotation marks omitted).  It was therefore appropriate for the ALJ to consider Durnil's improvement with treatment when evaluating his subjective complaints.

In light of these considerations, I find that the ALJ did not err in discounting Durnil's subjective complaints (i.e., Durnil's statements about the intensity, persistence, and limiting effects of his symptoms).  The ALJ explicitly found that Durnil's complaints were not entirely consistent with the medical and other evidence in the record, he identified good reasons for discounting the complaints, and his determination is supported by substantial evidence on the record as a whole.  As a result, I will defer to the ALJ's determination.  <u>See</u> <u>McDade</u>, 720 F.3d at 998 (finding the ALJ did not err in discounting the claimant's subjective complaints where the claimant "was not unduly restricted in his daily activities," "did not take any long-term narcotic medication for pain relief," and his "description of the severity of the pain [was] so extreme as to appear implausible"); <u>Medhaug</u>, 578 F.3d at 816–17 (reversing district court's conclusion that the ALJ erred in discounting the claimant's subjective complaints where the ALJ considered that the claimant responded to medical treatment, engaged in work activity after his alleged onset of disability, and performed daily activities that were inconsistent with his complaints of pain).

**Conclusion**

The ALJ's decision demonstrates that he evaluated all of the medical and other evidence in Durnil's case record and adequately explained his reasons for the weight given to the evidence.  Although Durnil may believe that the evidence should have been assessed differently, it is not my role to reweigh evidence considered by an ALJ.  See Hensley, 829 F.3d at 934.  Because the ALJ's decision complies with the relevant legal requirements and is supported by substantial evidence on the record as a whole, the decision must be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff Douglas Durnil's complaint is **DISMISSED** with prejudice.

A separate Judgment in accordance with this Memorandum and Order will be entered this same date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 29th day of August 2022.